**BANK OF BENTON,**
**Plaintiff-Appellant,**

v.

**KEITH HOWARD REAL ESTATE, INC. and Daniel Keith Howard, et al., Defendants-Appellees.**

No. 86–4335.

United States Court of Appeals, Fifth Circuit.

June 11, 1987.

David M. Touchstone, Touchstone & Wilson, Shreveport, La., for plaintiff-appellant.

J. Michael Cutshaw, Baton Rouge, La., for amicus curiae.

John A. Broadwell, Dosite H. Perkins, Jr., Asst. U.S. Attys., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for U.S.

J. Ransdell Keene, Evans, Feist, Auer & Keene, Shreveport, La., for Keith Howard Real Estate and Keith Howard.

Hal V. Lyons, Shreveport, La., for all other defendants-appellees.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

The Bank of Benton appeals the district court's grant of summary judgment in favor of the United States and denying a declaratory judgment that the bank has a mortgage on certain property. The bank claims that the district court misinterpreted Louisiana law. We affirm.

On November 22, 1983, Howard Real Estate Company sold seventeen lots in Grawood Estates, Caddo Parish, Louisiana, to Technology Export Associates (which subsequently became Exel Corporation). Exel executed a promissory note in favor of Howard, and this was paraphed for identification with an act of credit sale creating a vendor's lien. On February 17, 1984, Howard executed a promissory note in favor of the bank in exchange for a loan. As security, Howard executed a collateral pledge agreement, which pledged the November 22, 1983, promissory note executed by Exel and secured by the vendor's lien. The pledge agreement was never recorded.

Exel, owner of the lots, sold them to individuals and needed partial releases of Howard's vendor's liens. Howard did not disclose the unrecorded pledge to the bank, but appeared to execute acts of partial release. The acts of partial release stated: "After mentioning on said note the partial release herein granted, and after having paraphed said note 'Ne Varietur' for identification herewith, I, said Notary, have returned the same to the said holder who acknowledges delivery thereof." This was in fact untrue, as the notes were held by the pledgee bank. Howard received and retained money from the partial releases, and also defaulted on the February 1984 note to the bank. The bank brought suit against the individual buyers of the lots, the United States as holder of their mortgages under the Farmers Home Administration, and Howard Real Estate. The district court granted summary judgment for the United States on the ground that the unrecorded February 1984 pledge did not affect the rights of the United States. The court remanded the remainder of the case to Louisiana state court.

■ Louisiana law recognizes only three types of mortgage: (1) conventional, (2) legal, and (3) judicial. The February 1984 pledge transaction did not create a mortgage in any of these three senses. The Civil Code lists specific instances in which a legal mortgage arises, and executing a loan with a bank is not among them. La.Civ. Code Ann. arts. 3311–3319 (West 1952). A judicial mortgage results from a judgment, and such has not occurred here. *Id.* art. 3321. A conventional mortgage is a contract, and is distinguishable from a pledge. In the case of a mortgage, the property is not delivered to the creditor, but in the case of a pledge it is delivered to the pledgee. *Id.* art. 3152. No one disputes that the transaction in the instant case was a pledge, as the property was delivered to the bank.

■ On the other hand, while the February 1984 transaction did not create a mortgage, the November 1983 transaction did. The original conventional mortgage holder was Howard Real Estate, and the bank argues that, as pledgee, it is the current holder. The difficulty with the bank's position, however, is that it conflicts with the Louisiana public records doctrine, which states: "[a]ll sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between parties thereto." La.Rev.Stat.Ann. § 9:2756 (West Supp.1987). A straightforward application of section 9:2756 yields the result that the February 1984 agreement, since it "affects" immovable property, is null and void (except as between the bank and Howard). As against third parties the bank acquired no interest or priority in this property.

The bank argues that Louisiana courts have created an exception to the public records doctrine for cases in which a third party relies on a fraudulent cancellation or release of a document properly recorded. All the bank's attorneys ask is that we emasculate the statutes of Louisiana and deny protection to innocent purchasers in spite of the fact that they have relied on the public records. The bank cites *Gulf*

*South Bank & Trust Co. v. Demarest*, 354 So.2d 695 (La.App.1978), where the judgment declared fraudulent, and ordered erasure of, cancellations of mortgages. When the homeowners bought the property, the fraudulent cancellations made it appear that it was free of the mortgages; nevertheless the homeowners were not granted protection. The court states that recordation law does not "grant validity to forgeries." *Id.* at 697.

*Demarest* is adverse to the bank's position. The court there concludes that

a third person can rely upon *absence* from the records (*non-recordation*) as guaranteeing ineffectiveness of an instrument required to be recorded. But he cannot rely upon the *presence* in the records (*recordation*) of the instrument, because the only effect of recordation is admissibility into evidence with effectiveness against third persons. In our case, the unfortunate homeowners do not rely on the absence of the mortgages from the records—the mortgages are still there though marked cancelled. The homeowners rely upon the presence of the forged releases in the records, or, as a practical matter, upon the omission of those mortgages from the recorder's certificate. The presence of the releases in the records entitles the homeowners only to introduce the releases into evidence, as against third persons. The releases remain forgeries, still radically invalid, incapable of waiving the mortgagees' rights or of thereby freeing the home from the mortgages: only the "parties interested", C.C. 3371, can consent to the erasure of mortgage inscriptions.

*Id.* at 697–98 (emphasis in original). The instant case, in contrast to *Demarest*, involves the *absence* from the record of the 1984 pledge to the bank; it is not a case involving reliance on the *presence* in the record of a forgery. In *Demarest*, the home buyers relied on recorded forgeries. In the instant case, the home buyers relied on the fact that there was no recorded mortgage other than the November 1983 mortgage. The bank argues that the document releasing this mortgage was fraudulent. Even if this is true, however, it was an act in accord with the record upon which the purchasers could rely. Under Louisiana recordation law, unrecorded contracts affecting real property are void except as between the parties to the contract. The bank has a right of action against Howard, but not as against the United States or the individual buyers.

Appellant also cites *Bornes v. Vernon*, 64 So.2d 18, 20 (La.App.1953), which states that "the only way [a partial cancellation of a mortgage can be effective] would be by the holder producing the note and having the notary public paraph the note for identification with the act of partial release." The bank here argues that since it held the note and never produced it for paraphing with the act of partial release, no partial cancellation of the mortgage has occurred.

While the quoted language in *Bornes* appears to support appellant's position, the different facts of the present case deny that support. *Bornes* was a mandamus proceeding to compel the clerk of the court to record a partial release and cancel a mortgage in accordance with the release. The court held that the release was defective on its face because it did not state that the party executing it was the holder of the note. Consequently, the partial release was not entitled to recordation. The case did not raise the issue of the rights of a third party who acted in reliance on the public records. Unlike the instant case, *Bornes* did not invoke the Louisiana public records doctrine. The plaintiff there sought recordation of a contract, and not, as here, enforcement of an unrecorded contract. The decision in *Bornes* was not in conflict with section 9:2756, but a decision for the bank here would indeed be in conflict with this Louisiana statute.

Appellant argues further that under Louisiana law there is no requirement that pledges be recorded. La.Civ.Code Ann. arts. 3176–3181 (West 1952). It does not follow, though, that the bank possesses a valid mortgage on the property, since *mortgages* have force among creditors only from the time of recording. *Id.* art. 3329. If a pledgee wishes to enjoy the privileges

under a mortgage, he must meet the applicable recordation requirements.

AFFIRMED.